**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

VICTOR RAFAEL VIVAS-FEBLES,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CIVIL NO.  23-1227 (HRV)

**OPINION AND ORDER**

**INTRODUCTION**

Victor Rafael Vivas-Febles (hereinafter "Plaintiff" or "Mr. Vivas-Febles"), acting *pro se*, seeks review of the final administrative decision of the Acting Commissioner of Social Security ("the Commissioner") denying his claim for disability benefits under the Social Security Act. The Commissioner filed her brief arguing that the decision should be affirmed because it is based on substantial evidence. After careful consideration of the record, and for the reasons outlined below, the Commissioner's decision is AFFIRMED.

**STANDARD OF REVIEW**

Under the Social Security Act ("the Act"), a person is disabled if he or she is unable to do her prior work or, "considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d).

1

The Act sets forth a five-step inquiry to determine whether a person is disabled. *See* 20 C.F.R. § 404.1520(a)(4). The steps must be followed in order, and if a person is determined not to be disabled at any step, the inquiry stops. *Id*. Step one asks whether the Plaintiff is currently "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If he is, he is not disabled under the Act. *Id*. At step two, it must be determined whether the Plaintiff has a physical or mental impairment, or combination of impairments, that is severe and meets the Act's duration requirements. 20 C.F.R. § 404.1520(a)(4)(ii). Step three considers the medical severity of the Plaintiff's impairments. 20 C.F.R. § 404.1520(a)(4)(iii). If, at this step, the Plaintiff is found to have an impairment that meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P., app. 1, and meets the duration requirements, he is disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If Plaintiff is not determined to be disabled at step three, his residual functional capacity ("RFC") is assessed. 20 C.F.R. § 404.1520(a)(4), (e). Once the ALJ determines the RFC, the inquiry proceeds to step four, which compares Plaintiff's RFC to his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If Plaintiff can still do his past relevant work, he is not disabled. *Id*.  The Plaintiff bears the burden of proof at steps one through four. *Sacilowski v. Saul*, 959 F.3d 431, 434 (1st Cir. 2020). Finally, at step five, the Plaintiff's RFC is considered alongside his "age, education, and work experience to see if [he] can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v).  At this step, the Commissioner must present evidence of jobs in the national economy that claimant can perform. *Sacilowski,* 959 F.3d at 434.  If Plaintiff can make an adjustment to other work, he is not disabled; if he cannot, he is disabled. 20 C.F.R. § 404.1520(a)(4)(v).

The Act further provides that the "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record, could accept it as adequate to support [the] conclusion." *Irlanda-Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). The scope of my review is thus limited. I am tasked with determining whether the ALJ employed the proper legal standards and focused facts upon the proper quantum of evidence. *See Manso-Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's decision must be reversed only if it was derived "by ignoring evidence, misapplying law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

The fact that Plaintiff appears *pro se* does not liberate him from the obligation to reasonably develop his arguments. The court must hold his pleadings to a less stringent standard than those drafted by lawyers and interpret them to raise the strongest argument that they suggest. *Tefera v. Colvin*, 61 F. Supp. 3d 207, 214 (D. Mass. 2014). However, the leniency extended to *pro se* litigants does not immunize Plaintiff from the requirement of "making at least some attempt at legal argument." *See Tarantino v. Astrue*, 2011 U.S Dist. LEXIS 42144, at *8 (D. Mass. Feb. 8, 2011)(*quoting Watson v. Trans Union LLC*, 223 Fed. Appx. 5 (1st Cir. 2007)).

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff applied for disability insurance benefits in December of 2018, alleging his disability began on August 24, 2008. *See* Transcript of Social Security Proceedings ("Tr."), Docket 11 at 16. (Tr. 16). The application was denied initially on April 30, 2019, and on reconsideration on July 30, 2019. (*Id.*) Plaintiff requested a hearing on

September 19, 2019, and on June 10, 2020, the first of four telephone hearings was held. (Tr. 148-177). At said hearing, impartial vocational expert Tania J. Shulo testified. (Tr. 171-75). Despite being informed of his rights to do so, Mr. Vivas-Febles choose to appear and testify without the assistance of an attorney or other representative. At the conclusion of the hearing, the ALJ requested assistance from the State agency to obtain additional medical evidence that Plaintiff stated was not on the record. Once received, the evidence at issue was admitted into the record. *See* Exhibits 5F to 9F.

On April 20, 2021, a supplemental telephone hearing was held at which Dr. June Jimenez, an impartial medical expert, and Luisa Suess, an impartial vocational expert, testified. *Id*. Subsequently, a medical interrogatory (Exhibit 12) was sent to impartial medical expert Dr. Gilberto Muñoz because during hearing, Mr. Vivas-Febles informed he was significantly limited by his physical impairments. *Id*. After receiving the interrogatory, the same was admitted into the record as Exhibit 14 and was informed to Plaintiff. His objections to the responses to the interrogatory appear on the record at Exhibit 20E.

A further supplemental telephone hearing was held on January 13, 2022, for the sole purpose of providing Plaintiff with an opportunity to cross examine the medical expert regarding his responses to the medical interrogatory. *(*Tr. 17). Dr. Gilberto Munoz, the impartial medical expert who responded to the interrogatory, and Pedro M. Roman, an impartial vocational expert, testified at this hearing. *Id*.

After the third hearing, a vocational interrogatory was sent to vocational expert Ms. Luisa Suess, (Exhibit 23E) and her response was admitted into record as Exhibit 25E. *Id*. Mr. Vivas-Febles was notified of Ms. Suess' responses to the interrogatory as well as

her resume. Mr. Vivas-Febles requested yet another hearing to cross-examine Suess because he disagreed with her responses to the interrogatory. *Id*. He also requested that vocational expert Pedro M. Roman testify at this new hearing. On July 14, 2022, the fourth hearing in this case was held. During this last supplemental hearing, only impartial vocational expert Suess testified. (Tr. 44-60). The ALJ overruled Plaintiff's request for VE Román to be present and testify. (Tr. 50-51).

The ALJ issued her written decision on November 17, 2022. (Tr. 16-34). She found, at Step One, that Mr. Vivas-Febles did not engage in substantial gainful activity during the period of the alleged onset date of his disability, August 24, 2008, through his last date insured of September 30, 2014. (Tr. 20). As for severe impairments (Step Two), the ALJ determined that Plaintiff had lumbar degenerative disc disease, obesity, and a mayor depressive disorder, limiting his ability to perform basic work activities. (*Id.*). But the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Step Three) (Tr. 21).

The ALJ considered Plaintiff's lumbar conditions, but diagnostic studies failed to show compromise of a nerve root, and radiological studies of the lumbosacral spine showed minimal rotoscoliotic deviation and small anterolateral osteophytic formations at multiple levels. (*Id.*). Likewise, an MRI of the lumbar spine revealed normal results. The cited studies showed that there was no significant spinal canal stenosis or foraminal compromise. (*Id.*). Hence the finding that the impairments did not meet or equaled the severity of the listings.

As to obesity, after considering SSR19-2p, the ALJ found that Plaintiff's weight did not increase the severity of his coexisting impairments to the extent that the combination of said impairments meets the criteria of a listing. (*Id.*). She stated that there was no apparent clinical evidence on the record directly attributing Mr. Vivas-Febles' obesity to a specific medical determined condition or that it affected a weight-bearing joint. (*Id.*).

Similarly, Mr. Vivas-Febles' mental impairments did not meet or medically equal the criteria of Listing 12.04. The ALJ took into consideration whether Paragraph B criteria was satisfied. To satisfy Paragraph B criteria, the mental impairment must result in one extreme limitation[1] or two marked limitations[2] in a broad area of functioning. First, with respect to understanding, remembering, or applying information, the ALJ concluded that Plaintiff only had a moderate limitation. (*Id.*). He alleges having difficulties completing tasks, but the treating psychiatrist at the State Insurance Fund reported his memory was preserved. (*Id*). On a visit to an emergency room, Plaintiff was disoriented and had problems remembering, although he was mainly described as alert and fully oriented. (*Id.*).

Second, in interacting with others, the ALJ also found a moderate limitation (Tr. 22). Mr. Vias-Febles informed not having problems getting along with his family, friends,

---

[1] An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. 20 C.F.R. pt. 404, subpt. P. app 1.

[2] A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis. *Id.*

neighbors, and other persons, as well with figures of authority. (*Id.*). Third, as to concentrating, persisting, or maintaining pace, the ALJ again assessed a moderate limitation. (*Id.*). Plaintiff could drive, manage funds, and pay bills despite his asserted difficulties to concentrate and completing tasks. (*Id.*). For entertainment, Mr. Vivas-Febles read and watched television, activities that the ALJ concluded require a certain amount of concentration, and evidence in the record showed that he was consistently described as alert and fully oriented at several times. (*Id.*)

Lastly, as for adapting or managing oneself, the conclusion was that Plaintiff has, once again, a moderate limitation. (*Id.*). Plaintiff reported having no problems with his personal care and hygiene, could manage funds and drive, and shop in stores. (*Id.*).

In view of these findings, the ALJ concluded that Plaintiff's mental impairments did not cause at least two marked limitations or one extreme limitation. Paragraph B criteria was thus not satisfied. (*Id.*). The ALJ then considered whether Paragraph C criteria was satisfied. She also found that the evidence failed to establish the Paragraph C criteria. (*Id.*).

The ALJ then determined that Plaintiff had a residual functional capacity

> to perform light work as defined in 20 CFR 404.1567(b) except that he could lift and carry up to 20 pounds occasionally and up to 10 pounds frequently. He could stand and/or walk for up to 6 hours in an 8-hour workday and could sit for 2 hours in an 8-hour workday. The claimant could occasionally climb ramps and stairs, stoop, kneel, and crouch; but could never climb ladders, ropes, and scaffolds or crawl. He could occasionally operate foot controls and could not engage in commercial driving. The claimant could not be exposed to unprotected heights, moving mechanical parts or cutting instruments. He could frequently be exposed to extreme heat or cold and could frequently push, pull, and reach in all directions. The claimant could frequently perform

> handling and fingering. In addition, he could understand remember, and carry out simple and repetitive instructions and could maintain attention for 2-hour blocks in an 8-hour workday. The claimant could make simple work-related decisions and could adapt to simple changes in the work routine. He could frequently interact with supervisors and co-workers and could occasionally interact with the general public.

(Tr. 23).

In making her RFC determination, the ALJ noted that she considered all of Plaintiff's symptoms and the extent to which said symptoms can reasonably be accepted as consistent with the objective medical evidence or other evidence, as required by 20 C.F.R. § 404.1529 and SSR 16-3p; as well as medical opinions and prior administrative medical findings in accordance with 20 C.F.R. § 404.1520c. (*Id.*). The ALJ followed the required two-step process to ascertain if there was a medically determinable physical or mental impairment that could be reasonably expected to produce the pain and the other symptoms alleged by Mr. Vivas-Febles. (*Id.*). She also evaluated the intensity, persistence and limiting effects of the symptoms in determining the extent to which they limited Plaintiff's work-related activities. If the symptoms were not substantiated by the objective medical evidence, the ALJ looked at other evidence in the record to see if said symptoms limited Mr. Vivas-Febles ability to do work-related activities.

After an exhaustive and detailed discussion of the evidence on record (Tr. 24-30), the ALJ concluded that "while the impairments could reasonably be expected to cause the alleged symptoms; the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (Tr. 31).

Lastly, the ALJ determined that Plaintiff was unable to perform any past relevant work, (Step Four) but that considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he can perform (Step Five) such as: Garment Sorter, Price Marker, and Laundry Folder. As a result, Mr. Vivas-Febles was not disabled under the Act. (Tr. 32-34).

On January 6, 2023, Plaintiff requested review of the ALJ's decision to the Appeals Council. On March 13, 2023, the request was denied, making the Commissioner's decision final. (Tr. 1-7).

On May 9, 2023, Mr. Vivas-Febles filed his *pro se* Social Security Complaint in this Court. (Docket No. 1). On November 2, 2023, Plaintiff was ordered to show cause why his case should not be dismissed for failure to prosecute and comply with Rule 6 of Supplemental Rules for Social Security. (Docket No. 13). On November 15, 2023, Mr. Vivas-Febles responded to the order to show cause. (Docket No. 15). The Court then sua sponte granted Plaintiff a 30-day extension to file his brief. (Docket No. 16). On December 14, 2023, Mr. Vivas-Febles submitted a pleading titled "Answer to Order" but filed in the docket as a "Motion in Compliance." (Docket No. 17).

On December 26, 2023, the Commissioner requested an order to treat Plaintiff's December 14, 2023, pleading as his brief and to adjust the deadline to respond accordingly. (Docket No. 18). I granted the request. (Docket Nos. 19 and 20).

On February 26, 2024, the Commissioner filed a supplemental social security transcript (Docket No. 25), and his defendant's social security brief. (Docket No. 27). On March 20, 2024, Plaintiff filed a motion responding to the Commissioner's brief and

making additional arguments. (Docket No. 28). I will construe said motion as an untimely reply brief and consider it as part of my review of the case.

## ANALYSIS

Plaintiff's pleadings are not a model of clarity or structure. However, construing them liberally, I note that in his attempt to win remand, Mr. Vivas-Febles raises the following claims: (1) erroneous denial of his request for Supplemental Security Income (SSI); (2) discrimination based on the SSA communicating with him in English; (3) the ALJ's alleged biased and unfair handling of his case; (4) the re-numbering of his administrative case; (5) the failure to refer Plaintiff to undergo a physical examination; (6) error in his classification as a supervisor; and (7) using national economy statistics at step five instead of focusing on Puerto Rico. I address each contention in turn.

### 1. SSI – Puerto Rico Residents

Plaintiff avers that on July 5, 2019, he received a letter in English notifying that he was not eligible for SSI because he did not reside in any of the 50 states, the District of Columbia or the Northern Marianna Islands. Plaintiff attached the letter he received to his brief. (Docket No. 17). The Commissioner launches a three-pronged attack on this claim. First, that the Court lacks subject matter jurisdiction to review the denial of SSI because there is no indication that Plaintiff actually applied for that benefit. Second, that even if he applied for SSI, Plaintiff has not received a final decision within the meaning of § 405(g) and has, therefore, failed to exhaust administrative remedies. And third, that even if Plaintiff had filed an application and exhausted administrative remedies, the claim fails on the merits because under Supreme Court precedent, Puerto Rico residents can be excluded from the SSI program.

Although the Commissioner makes valid arguments regarding subject matter jurisdiction, I bypass the statutory jurisdictional question because Plaintiff's claim fails on the merits. *See Moriarty v. Colvin*, 806 F.3d 664, 668 (1st Cir. 2015). To be eligible for SSI, an individual must be a "resident of the United States," 42 U.S.C. § 1382c(a)(1)(B)(i), which the statute defines as the 50 States, the District of Columbia, and the Northen Mariana Islands. 42 U.S.C. § 1382c(e) and Note following 48 U.S.C. § 1801: 90 Stat. 268. In *United States v. Vaello-Madero*, 596 U.S. 159, 142 S. Ct. 1539, 212 L. Ed. 2d 496 (2022), the Supreme Court of the United States held that Congress could exclude Puerto Rico residents from the SSI program without running afoul of the equal-protection component of the Fifth Amendment's Due Process Clause. Therefore, as a Puerto Rico resident, Plaintiff is not entitled to SSI.

### 2. *Discrimination Based on English Language Correspondence*

Mr. Vivas-Febles alleges that the SSA only communicated with him in English. He claims this amounts to discrimination because as resident of Puerto Rico, his principal language is Spanish. (Docket No 17 at 2; Docket No. 28 at 2). This claim is easily disposed of.  For starters, it is significantly underdeveloped. No authority has been cited for the proposition that sending correspondence and notifications in English is discriminatory. In any event, the record shows that Plaintiff understands and writes in English. At one of the hearings, and in response to the ALJ's offer to translate something into Spanish, Mr. Vivas-Flebes replied: "No, I'm clear because I understand English, and I write in English, and I understand everything that's said to me." (Tr. 94). In a different context, Plaintiff affirmed that he was able to understand a notification that was sent to him in English. (Tr. 152).  And here, Plaintiff has submitted all of his pleadings in English.

11

### 3. *Bias and Unfairness*

Plaintiff alleges that the ALJ was biased and unfair in handling his case. (Docket No. 17 at 3). Specifically, he contends that he requested vocational expert "Pedro" (VE Pedro Roman) to evaluate his case and the Judge denied his request. (*Id.*). Mr. Vivas-Febles also claims that the ALJ used Ms. Suess's (VE Luisa Suess) evaluation numerous times and takes exception with the ALJ's rejecting of his suggestion that a different vocational expert be used. (*Id.*).

Under the Code of Federal Regulations, "[a]n administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision." 20 C.F.R. § 404.940. "In assessing a charge of bias, the court must start with the presumption that the ALJ is unbiased, 'but this presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification.'" *Grady v. Astrue*, 894 F. Supp. 2d 131, 143 (D. Mass. 2012) (*quoting Schweiker v. McClure*, 456 U.S. 188, 195, 102 S. Ct. 1665, 72 L. Ed. 2d 1 (1982)). Plaintiff bears the burden of establishing a reason for disqualification. *Id.*

On the other hand, vocational experts function as consultants in the adjudicative process, assisting the ALJs in determining what the outcome should be. *Seavey v. Barnhart*, 276 F.3d 1, 8 (1st Cir. 2001). They are not experts retained in an effort to shore up an agency's litigation position. *Id.* Moreover, [t]he administrative process permits a claimant to question the vocational expert, and to clarify or develop the vocational expert's testimony. *Kim M v. Kijakazi*, No. 21-cv-00133-GZS, 2022 WL 42914, 2022 U.S. Dist. LEXIS 1097, at *11 (D. Me. Jan. 4, 2022).

The Hearings, Appeals, and Litigation Law Manual ("HALLEX") provides a guideline on how experts are selected. A vocational expert is a professional who "provides testimony by either testifying at a hearing or providing a written response to interrogatories." (HALLEX I-2-5-48). A vocational expert is selected by a roster that every office of hearings operations maintains, staff will select a VE from the roster, and VE's are rotated equitably. (HALEX I-2-5-52(A)). When a VE is selected, that VE will go to the bottom of the roster and will not be selected again until all others available VE's who are higher on the roster have been selected. (*Id.*)

Plaintiff was afforded four hearings during his administrative process. On the first hearing VE Tania J. Shulo testified. VE Luisa Suess testified at the second hearing. On the third one VE Pedro M. Roman testified. And on the fourth hearing, VE Luisa Suess testified for the second time. (Tr. 16-17). The last hearing was conducted at Plaintiff's request, so that he could cross-examine VE Suess because he disagreed with her responses to the interrogatory that was sent. (Tr. 17). At said hearing, the ALJ informed Plaintiff that the vocational experts were randomly assigned and that she doesn't choose the vocational experts. (Tr. 50). The ALJ further stated during said hearing that VE's answer questions posed by the ALJ, a representative, or the claimant based on hypotheticals. (*Id.*). Also, it was clarified that when VE Pedro Roman answered questions at a prior hearing, he did so based on the evidence available at the time he testified. Similarly, VE Suess' questions were based on the evidence available at the time she was testifying. (Tr. 52).

Plaintiff has completely failed to rebut the presumption that the ALJ was unbiased. Likewise, there is no evidence in the record or presented by Plaintiff showing that the

ALJ was unfair in any way. On the contrary, the record of the administrative proceeding reflects that Plaintiff was afforded ample opportunity to establish his claim of disability and to challenge the expert opinion he disagreed with. The record shows that the ALJ was exceedingly patient. And her written decision reflects a conscientious effort to carefully analyze the evidence *vis a vis* the applicable legal standards. This claim must be rejected.

### 4. Renumbering of Administrative Case

In a rather skeletal way, Plaintiff takes issue with the fact that the Social Security Office originally assigned number 0818401 to his case, (Docket No. 17 and Tr. 356), but that on July 9, 2019, it changed the case number to 0831607. During the hearing of April 20, 2021, Mr. Vivas-Febles brought the matter to the attention of the ALJ. (Tr. 106-108). This is, according to Plaintiff, another "irregularity" in his case.

Plaintiff fails to cite any authority for the proposition that the change in numbers, which is an internal agency procedural matter, was somehow prohibited, inappropriate, or contrary to law. Critically, Mr. Vivas-Febles does not show that he was prejudiced by said decision. *Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 173 L. Ed. 2d 532 (2009)("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.")(citations omitted). I, thus, find, that this claim of error must also be rejected.

### 5. Physical Examination

Plaintiff next takes aim at the decision of the ALJ not to refer him to a consultative physical examination (Docket No. 17 at 2) and suggests that the opinion of the non-

examining medical expert, Dr. Gilberto Muñoz, should not have been given weight because he did not physically examine him. (*Id.* at 3).

An ALJ "may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the ALJ] to make a determination or decision on a [claimant's] claim." *Harry E. B. v. Kijakazi*, No. 21-cv-118-LEW, 2022 WL 669689, 2022 U.S. Dist. LEXIS 669689, at *10-11 (D. Me. Mar. 6, 2022) (*quoting* 20 C.F.R. §§ 404.1519a(b), 416.919a(b)). The decision to order such consultative examination is discretionary and failure to order one does not constitute an abuse of discretion "unless the examination was necessary to enable the ALJ to determine disability." *Id.* (*quoting Charles T.C. v. Saul*, No. 19-cv-00564-NT, 2020 WL 5370551, 2020 U.S. Dist. LEXIS 162900, at *6 (D. Me. Sept. 7, 2020)).

Mr. Vivas-Febles does not explain why a consultative physical examination was warranted in the face of extensive medical records that the ALJ reviewed in making her determinations regarding Plaintiff's limitations. *See Lindahl v. Barnhart*, Civil No. 02-400-B, 2003 U.S. Dist. LEXIS 14546 (D.N.H. Aug. 21, 2003). Moreover, there was nothing "unconstitutional or improper" in seeking the assistance of a non-examining medical adviser such as Dr. Muñoz. *See Richardson v. Perales*, 402 U.S. 389, 408, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). Simply put, my review of the record does not reveal that a physical examination was needed because the evidence already on the record was insufficient for a proper evaluation of the claim. *See Rackliff v. Berryhill*, No. 16-cv-00250-JHR, 2017 WL 2266796, 2017 U.S. Dist. LEXIS 77867, at *18 (D. Me. May 22, 2017).

To the extent that there were differences between the evaluation of the non-examining medical expert Dr. Muñoz (who Plaintiff erroneously refer to as Dr. Roman), and the opinion of the ALJ, these differences are inconsequential. The Commissioner concedes that the ALJ's findings differ from the opinion of the nom-examining medical expert. The ALJ found that Plaintiff was more physically limited (Tr. 23). This is a finding that is favorable to Mr. Vivas-Febles. Therefore, I agree with the Commissioner that remand is not be warranted on the basis of said discrepancy. *Dube v. Kijakazi*, No. 23-1068, 2024 WL 372841, 2024 U.S. Dist. LEXIS 2448 (1st Cir. Jan. 16, 2024); *see also Smith v. Berryhill*, 370 F. Supp. 3d 282, 289 (D. Mass. 2019)(plaintiff failed to show how she was prejudiced by a more restricted RFC).

### 6. *Supervisory Classification*

Mr. Vivas-Febles argues that it was error to classify him as a supervisor of the Electric Power Authority. (Docket No. 17 at 2-3; Docket No. 28 at 4). He insists that he was not a supervisory, but a union employee. It is not entirely clear how the misclassification, if there was one, affected the reasoning and ultimate conclusion of the ALJ.

The Commissioner ripostes that the record does contain references to Plaintiff having a supervisory role in his past relevant work. Mr. Vivas-Febles testified that he was a "non-managerial supervisor in charge of a group," and "a group leader" or "brigade supervisor." (Tr. 93, 191). While a vocational expert categorized Plaintiff's past relevant work as an "electrician supervisor", the ALJ never adopted said classification. In fact, in her decision, and as part of the analysis of step four of the sequential evaluation process, the ALJ referred to Plaintiff's prior relevant work as "Line Erector", "Line Servicer", and

"Power Line Worker". (Tr. 32). I am called to review the final decision of the ALJ under § 405(g), and I do not find that any error in classifying Plaintiff's past relevant work as having a supervisory component, affected in any way the final determination of the ALJ.

In any case, even if there was error, such error would not require a remand. At step four of the analysis, the ALJ determined that Plaintiff could not perform his past relevant work, be it as supervisor in charge of a group or simply as a union employee line servicer. *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 656 (1st Cir. 2000)("[A] remand is not essential if it will amount to not more than an empty exercise."). An "ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Rivera v. Comm'r of Soc. Sec. Admin.*, Civil No. 12-1479 (BJM), 2013 U.S. Dist. LEXIS 126952, 2013 WL 4736396, at *11 (D.P.R. Sept. 3, 2013) (*quoting Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)).

### 7. *National Economy Statistics – Step Five Finding*

The VE identified three jobs that Plaintiff could perform: garment sorter, price marker and laundry folder, which together combined for more than 300,000 jobs in the national economy. (Tr. 891-92). Based on this, the ALJ concluded that there were jobs existing in significant numbers in the national economy that Plaintiff could perform in light of his RFC, age, education and work experience. Plaintiff contends that this was error because he lives in Puerto Rico. Thus, according to Plaintiff, the national statistics are irrelevant because "work conditions in Puerto Rico are different to the ones in the 50 States." (Docket No. 17 at 3).

The regulations addressing the concept of "[w]ork which exists in the national economy," explain the process as follows:

17

> (a)   General. We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country. It does not matter whether—
>
> (1) Work exists in the immediate area in which you live;
> (2) A specific job vacancy exists for you; or
> (3) You would be hired if you applied for work.
>
> (b) How we determine the existence of work. Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered "work which exists in the national economy". We will not deny you disability benefits on the basis of the existence of these kinds of jobs. If work that you can do does not exist in the national economy, we will determine that you are disabled. However, if work that you can do does exist in the national economy, we will determine that you are not disabled.

20 C.F.R. § 404.1566(b). The plain language of the regulation does not support Plaintiff's contention that the analysis should have only focused on the number of jobs existing Puerto Rico's local economy. *See Dashawn v. Astrue*, Civil No. 10-cv-456-SM, 2011 U.S. Dist. LEXIS 122888, at *19 (D.N.H. Oct. 24, 2011)(noting that because the jobs identified by the ALJ exist in significant numbers in the national economy, the court did not need to address the argument that the identified jobs did not exist in sufficient numbers in the local economy.); *see also Rivera v. Comm'r of Soc. Sec.*, Civil No. 20-1374 (MEL), 2022 WL 702416, 2022 U.S. Dist. LEXIS 43476, at * 31-32 (D.P.R. Mar. 9, 2022).

## CONCLUSION

As discussed above, I find no merit in any of the argument advanced by Plaintiff claiming discrimination and irregularities in the handling of his administrative case.

Moreover, the determination of the ALJ that there are jobs existing in significant numbers in the national economy that Plaintiff can perform given his age, education, work experience and RFC is supported by substantial evidence on the record. Plaintiff has not met his burden to show otherwise. Accordingly, the decision of the Commissioner is hereby AFFIRMED.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico this 23rd day of December 2024.

S/Héctor L. Ramos-Vega
HÉCTOR L. RAMOS-VEGA
UNITED STATES MAGISTRATE JUDGE
